**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. No. 2:25-cr-01430-MIS

LUIS JESUS ESCOBEDO-MOLINA,

Defendant.

**ORDER DIMISSING COUNTS 2 AND 3 OF THE
INFORMATION WITH PREJUDICE**

THIS MATTER is before the Court on the Parties' responses to the Court's Orders to Show Cause and the Government's accompanying Motion to Dismiss Counts 2 and 3 of the Information Without Prejudice. *See* ECF Nos. 14-19, 22. Upon due consideration of the Parties' submissions, the record, and the relevant law the Court will **DENY** the Government's Motion and will **DISMISS WITH PREJUDICE** Counts 2 and 3 of the Information.

## BACKGROUND

This case is one in an enormous series representing a new prosecutorial strategy against individuals who enter the United States unlawfully at the southern border. Following the Trump Administration's designation of the New Mexico National Defense Area (NMNDA), the Government began charging those who are apprehended at the U.S.-Mexico border with two crimes in addition to the standard Illegal Entry Without Inspection (8 U.S.C. § 1325): Penalty for Violation of Security Regulations in violation of 50 U.S.C. § 797 and Entering Military Property in violation of 18 U.S.C. § 1382. The Undersigned alone has been assigned over 400 of these new cases in less than a month. The procedural history of the instant case is emblematic of that of majority of cases charged in this manner.

Defendant was charged via Information with the three misdemeanors described above on May 16, 2025, ECF No. 6. The same day, the Honorable Damian L. Martinez, United States Magistrate Judge for the District of New Mexico, held an arraignment, detention, plea, and sentencing hearing at which Defendant pleaded guilty to Count 1 of the Information, Illegal Entry Without Inspection, and was sentenced to time served. ECF No. 7. Pursuant to his authority under the Bail Reform Act, 18 U.S.C. § 3142, Judge Martinez ordered that Defendant be released pending disposition of Counts 2 and 3, 50 U.S.C. § 797 and 18 U.S.C. § 1382. *Id.*; ECF No. 8. For reasons the Court need not delve into here, Judge Martinez additionally found that evidence proffered by the United States failed to establish probable cause on an element of both Counts 2 and 3 and that therefore those charges "appear[ed] to be fatally deficient." ECF No. 10. Judge Martinez therefore severed Count 1 from Counts 2 and 3, *id.*, and entered judgment as to Count 1, ECF No. 11.

This case was then reassigned to the Undersigned. On June 13, 2025, the Court issued an Order to Show Cause directing the Government to (1) advise the Court as to the Defendant's whereabouts, namely, whether he had been removed from the United States, and (2) if Defendant had been removed, (a) advise the Court as to what steps it had taken to ensure that Defendant would be able to reenter the country to stand trial, and (b) show cause as to why the pending charges should not be dismissed. ECF No. 14. The Government responded on June 23. The Government stated that "Defendant has been deported from the United States[,]" his "current whereabouts are unknown[,]" and "[n]o steps have been taken to ensure that Defendant may reenter the country to stand trial." Resp. to Order to Show Cause & Unopposed Mot. to Dismiss Counts 2 & 3 of the Information Without Prejudice ("MTD") at 1, ECF No. 15. In the same

document, the Government moved the Court to dismiss Counts 2 and 3 of the Information without prejudice under Federal Rule of Criminal Procedure 48(a). *Id.* at 2.

Thereafter, the Court issued a Supplemental Order to Show Cause in which the Court (1) directed the Government to advise the Court as to what steps it took to maintain Defendant's presence in the United States, (2) directed counsel for the Defendant to advise the Court as to whether they have been able to communicate with their client since his immigration detention and deportation, and (3) directed both Parties to advise the Court as to the dates and locations of Defendant's detention and removal. ECF No. 16 (June 25, 2025). On July 2, the Government responded that "[o]nce Defendant was transferred to ICE custody, the United States has not interfered in the deportation process or otherwise sought to delay Defendant's removal from the United States." United States' Resp. to Supplemental Order to Show Cause ("Gov't's Suppl. Resp.") at 2, ECF No. 17. The Government additionally attached a spreadsheet indicating that Defendant was detained by ICE on May 19 and was deported to Mexico the next day, May 20. ECF No. 17-1.

Defense counsel responded on July 8. According to counsel, her last communication with her client was in court on May 16. Reply to Gov't's Resp. to Order to Show Cause & Unopposed Mot. to Dismiss Counts 2 and 3 of the Information without Prejudice & Resp. to Suppl. Order to Show Cause ("Def.'s Resp.") at 1, ECF No. 18. Counsel provided Defendant with her contact information, but is aware that DHS "will often not allow clients to take legal documents with them when they are picked up" by immigration authorities, and it is unknown whether Defendant "was allowed to keep any letter, card or document provided by [counsel], including contact information." *Id.* at 2. According to Defense counsel, although the Government stated that Defendant was detained by ICE, it is likely that he was in fact detained by CBP (Customs and

Border Protection), which often coordinates removals for individuals who are citizens of Mexico. *Id.* at 3. Because Defendant's detainer was likely issued by CBP, Defense counsel believes that CBP "picked [Defendant] up and transported him to the border for removal without taking him to an [ICE] office to evaluate him for potential supervision and parole." *Id.* Defense counsel additionally indicated that although "a dismissal with prejudice would be in the interest of justice," she did not oppose a dismissal without prejudice as a means of disposing of the case. *Id.* at 11. On July 10, the Government filed a reply in which it corrected some of Defense counsel's statements regarding the applicability and function of parole provisions. United States' Reply to Def.'s Reply to Order to Show Cause, ECF No. 19. With leave of the Court, Defendant filed a surreply on July 11. Def.'s Surreply to the United States' Reply to Def.'s Reply of Order to Show Cause, ECF No. 22.

## DISCUSSION

The Court concludes that dismissal with prejudice of the remaining counts is warranted in this case. The Government's inattention to statutory and constitutional rights has been a consistent throughline through these hundreds of cases. Time and time again the Government has initiated a prosecution (at the behest of the Department of Homeland Security (DHS)), only to turn around within days and deport the defendant while the charges are pending and thereby necessarily imperil the defendant's Fifth Amendment, Sixth Amendment, and Speedy Trial Act rights. The Court is fully aware that the U.S. Attorney's Office (USAO) does not control the actions of DHS. But USAO, like all attorneys, is responsible for their client's conduct in litigation. And, despite this Court's clear warnings, USAO repeatedly made the decision, in this case and hundreds of others, *not* to take measures it has within its power to ensure Defendant could remain in the United States to face the charges against him, or lawfully return to the United

States to stand trial. Given the constitutional rights violations in this case, and the status of such violations as merely one example of many, dismissal with prejudice is appropriate.

## I. Legal Standard

A federal district court may dismiss charges in reliance on its supervisory powers. *See United States v. Kilpatrick*, 821 F.2d 1456, 1465 (10th Cir. 1987). "Guided by considerations of justice, and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." *United States v. Hasting*, 461 U.S. 499, 505 (1983) (cleaned up). Three purposes underly the use of such supervisory powers: "to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct." *Id.* (cleaned up); *see also Kilpatrick*, 821 F.2d at 1465 ("The supervisory powers theory focuses on deterring illegality and protecting judicial integrity."). Courts ought to maintain a "restrained and circumspect approach to the exercise of the supervisory power." *See United States v. Lilly*, 810 F.3d 1205, 1219 (10th Cir. 2016). The particular remedy utilized in exercise of supervisory powers must be "tailor[ed]" to the violation in order to "neutralize the taint" caused thereby. *United States v. Morrison*, 449 U.S. 361, 365 (1981). Dismissal of charges is an appropriate remedy, for example, "when the investigatory or prosecutorial process has violated a constitutional or statutory right and no lesser remedial action is available." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991).

## II. Analysis

### *A. Constitutional and Statutory Violations*

This Court is not the first to confront the issue of the proper course of action when a defendant is deported from the United States while criminal charges are pending against them. As federal district courts across the country have concluded, such circumstances implicate a defendant's Fifth Amendment, Sixth Amendment, and Speedy Trial Act rights.[1] All have been (or will be imminently) violated in this case. And, as other courts have held, these violations warrant dismissal of the charges.

Defendant's deportation has, to put it simply, wrought havoc on his Fifth and Sixth Amendment rights. The Fifth Amendment Due Process Clause "guarantees that a criminal defendant will be treated with 'that fundamental fairness essential to the very concept of justice.'" *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). "In order to declare a denial of [due process] we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Id.* (quoting *Lisenba*, 314 U.S. at 236). The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. The right to counsel,

[1] *See, e.g.*, *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1137-38 (M.D. Fla. 2015) (adopting magistrate judge's report and recommendation, holding that the defendant's removal violated his Fifth and Sixth Amendment and Speedy Trial Act rights and dismissing indictment without prejudice); *United States v. Galvan-Orea*, 766 F. Supp. 3d 740, 745-46 (E.D. Mich. 2024) (holding that the defendant's removal "impeded [his] Fifth Amendment right to due process and Sixth Amendment right to counsel" and dismissing indictment without prejudice); *United States v. Castillo*, 537 F. Supp. 3d 120, 127-28 (D. Mass. 2021) (holding that the defendant's removal violated his Fifth Amendment right to due process and Sixth Amendment right to counsel, and that indefinite delay in trial would violate his right to a speedy trial under the Sixth Amendment and Speedy Trial Act and dismissing indictment without prejudice); *United States v. Munoz-Garcia*, 455 F. Supp. 3d 915, 920-21 (D. Ariz. 2020) (holding that the defendant's removal caused violations of her Sixth Amendment rights to confer with counsel and to a speedy trial and dismissing indictment with prejudice); *United States v. Ferreira-Chavez*, No. 1:20-cr-00145-BLW, 2021 WL 602822, at *1-6 (D. Idaho Feb. 12, 2021) (same); *United States v. Urizar Lopez*, 587 F. Supp. 3d 835, 843-46 (S.D. Iowa 2022) (finding that delay where the defendant had been removed from the United States constituted a violation of the defendant's Sixth Amendment rights and dismissing indictment with prejudice).

"fundamental to our system of justice[,] is meant to assure fairness in the adversary criminal process." *Morrison*, 449 U.S. at 364; *see also Luis v. United States*, 578 U.S. 5, 19 (2016) (stating that the Sixth Amendment right to assistance of counsel "is a fundamental constituent of due process of law"). "The core of [the Sixth Amendment right to counsel] has historically been, and remains today, 'the opportunity for a defendant to consult with an attorney and to have him investigate the case and prepare a defense for trial.'" *Kansas v. Ventris*, 556 U.S. 586, 590 (2009) (quoting *Michigan v. Harvey*, 494 U.S. 344, 348 (1990)).

The Government's removal of Defendant from the United States has vitiated these fundamental rights. Defense counsel has been unable to speak with Defendant since he was deported and has no known means of doing so. Indeed, Defense counsel believes that when immigration authorities picked up Defendant, they may have discarded the contact information (as well as any legal documents) she had previously given to Defendant. It is self-evident that effective assistance of counsel necessarily requires the ability of a defendant to communicate with their counsel. *See Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) ("[I]n the context of the right to counsel, unreasonable interference with the accused person's ability to consult counsel is itself an impairment of the right."); *Geders v. United States*, 425 U.S. 80, 91 (1976) (holding that preventing defendant from consulting his attorney during an overnight trial recess violated the Sixth Amendment); *Tucker v. Randall*, 948 F.2d 388, 390-91 (7th Cir. 1991) (holding that Sixth Amendment rights were implicated where pretrial detainee was denied phone access for four days).

Although cross-border communication is, of course, theoretically possible, it is neither readily achievable nor sufficient in this case. *See United States v. Ferreira-Chavez*, No. 1:20-cr-00145-BLW, 2021 WL 602822, at *4 (D. Idaho Feb. 12, 2021) ("While [the defendant] may be

able, hypothetically, to confer with counsel, the reality is that he is now in another country. His whereabouts are unknown and Defense counsel has been unable to communicate with him since his removal. As such, [the defendant's] ability to meaningfully communicate with counsel or prepare his defense have been severely curtailed by the action of the Government."). In fact, the impediments to Defendant's ability to confer with counsel began even before he was deported: defense counsel represented that she would have been unable to communicate with Defendant while he was in immigration custody since he was most likely never at an immigration detention facility. *Cf. Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) (recognizing that "a detainee's constitutional rights may be infringed where [a] transfer [between facilities] interferes with his right to assistance of counsel"). As the Supreme Court has held, "[t]o deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself." *Maine v. Moulton*, 474 U.S. 159, 170 (1985); *see also United States v. Wade*, 388 U.S. 218, 225 ("As early as *Powell v. State of Alabama*, we recognized that the period from arraignment to trial was perhaps the most critical period of the proceedings during which the accused requires the guiding hand of counsel if the guarantee is not to prove an empty right." (cleaned up)). Further, having been deported and rendered unable to communicate with his attorney, Defendant's "right to present a defense," which "is a 'fundamental element of due process of law,'" has been fatally impaired. *United States v. Bautista*, 145 F.3d 1140, 1151 (10th Cir. 1998) (quoting *Richard v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997)). It is clear that the Government's actions have impinged upon Defendant's rights to counsel and to due process in this case.

So, too, have Defendant's Sixth Amendment speedy trial rights been impaired. Under the Sixth Amendment, a defendant in a criminal prosecution "shall enjoy the right to a speedy and

public trial." U.S. Const. amend. VI. The Supreme Court has established a four-part inquiry to determine whether a defendant's constitutional right to a speedy trial has been violated. *Barker v. Wingo*, 407 U.S. 514 (1972). Under the *Barker* test courts must balance the following factors: "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006). Delays of about a year or longer are generally presumptively prejudicial. *See id.* at 1244 (citing *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006)). Although the delay in the present case has not yet reached that threshold, it is not mere speculation to assume it would. The Government has conceded that it has done nothing to secure Defendant's presence in the United States, and in this District, for trial. Barring the Defendant's own (almost certainly unlawful) return, the delay in this case would be interminable. As a sister court reasoned in a similar case,

> [W]hile the delay, at this point, may not be 'presumptively prejudicial,' at some point, in the not-so-distant future, it will become so. Would the Government have the Court, and Defendant, wait until some future point and then dismiss the indictment because the delay has passed the 1-year threshold? Simply put, the Government's actions have caused the delay to-date and will continue to cause delay. The Court cannot ignore reality.

*Ferreira-Chavez*¸ 2021 WL 602822, at *2; *cf. United States v. Galvan-Orea*, 766 F. Supp. 3d 740, 746 (E.D. Mich. 2024) ("The Court does not see any justification to allow this matter to be held in what will be an indefinite abeyance.").

The remaining *Barker* factors weigh in favor of a constitutional violation in this case. The reason for the delay is entirely the Government's. It was the Government that deported Defendant, rendering him fundamentally unable to stand trial. Although Defendant has not asserted his speedy trial rights as such, he cannot be faulted for this seeming omission: as discussed above his counsel has been unable to communicate with him since his deportation. Finally, seeing as the indefinite delay in this case would practically amount to the denial of a trial

whatsoever, it is quite obviously prejudicial to Defendant. Accordingly, the Court finds that Defendant's Sixth Amendment right to a speedy trial has been violated. Moreover, "to the extent that the government seeks to proceed with this prosecution in Defendant's absence, his absence 'necessarily prevents a fair trial' in violation of the Fifth Amendment.'" *United States v. Castillo*, 537 F. Supp. 3d 120, 128 (D. Mass. 2021) (quoting *Valenzuela-Bernal*, 458 U.S. at 872).

Finally, although it won't come to fruition in the instant case, a Speedy Trial Act violation was imminent and will continue to be so in many other cases of the same ilk. The Information in this case was filed on May 16. Under the Speedy Trial Act, Defendant is entitled to a trial on the charges contained therein by July 25. Because the Court is now dismissing the charges, there has not been a Speedy Trial Act violation. But there is no doubt that there would have been one in short order. Although the Government's motion to dismiss has stopped the speedy trial clock, thirty-eight countable days had already elapsed by that point. The Court set this case to begin trial on July 21, ECF No. 13, but the Government has done nothing on the record to prepare for trial. Indeed, the Government did not file anything after Defendant's plea and sentencing on the Illegal Entry Without Inspection charge until prompted by the Court's Show Cause Order. More to the point, because the Defendant has been deported and is unable to stand trial, an eventual violation of the Speedy Trial Act would have been a certainty.

*B. Remedy*

No Party disputes that dismissal of the remaining charges is appropriate in this case. The Government has moved for dismissal without prejudice, which motion Defense counsel has indicated is unopposed. But dismissal without prejudice is not sufficient here, as the Government has proven by its actions in the 800-odd cases it has brought to the Las Cruces federal courthouse. The Government's demonstrated pattern of casual disregard for constitutional and

statutory rights—a pattern that has persisted despite repeated warnings from this Court—merits stronger medicine. For the reasons set forth fully below, the Court concludes the charges in the instant case must be dismissed with prejudice.[2]

Dismissal with prejudice is warranted as an exercise of this Court's supervisory powers.[3] A court's exercise of supervisory powers is animated by three purposes: "to implement a remedy for violation of recognized rights; to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury; and finally, as a remedy designed to deter illegal conduct." *Hasting*, 461 U.S. at 505 (citations omitted). The second purpose is irrelevant here; the first and third are served by dismissal with prejudice in this case. As discussed above, Defendant's statutory and constitutional rights have been violated by the Government's actions. Furthermore, the Government has repeated this course of action despite knowing of the rights violations it causes. In making this decision, the Court is cognizant of the Tenth Circuit's cautions as to the exercise of supervisory powers: dismissal of charges with prejudice is a "drastic remedy," *Kilpatrick*, 821 F.2d at 1474,[4] and the Court does not utilize it lightly. The Undersigned is nevertheless firm in her conclusion that dismissal with prejudice is required here.

---

[2] The Court finds that dismissal with prejudice is appropriate notwithstanding the Government's motion to dismiss without prejudice under Federal Rule of Criminal Procedure 48(a). Rule 48(a) provides that "[t]he government may, with leave of the court, dismiss an . . . information . . . ." In the first place, in denying the Government's motion here the Court is, of course, not requiring the Government to continue its prosecution, as is usually the case when such a motion is denied. Further, one of the purposes of the leave-of-court requirement under Rule 48(a) is "to allow courts to consider public interest, fair administration of criminal justice and preservation of judicial integrity when evaluating motions to dismiss." *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988). For the reasons discussed at length below, the "fair administration of criminal justice" requires dismissal *with* prejudice to remedy Defendant's constitutional injury and to dissuade the Government from its pattern of rights-violating conduct. To the same point, Rule 48 strikes this Court as fundamentally inapposite here, where the Court concludes that Fifth and Sixth Amendment rights violations warrant dismissal.

[3] It is unclear whether the Fifth and Sixth Amendments provide distinct bases for dismissal apart from the Court's exercise of supervisory powers. *See Kilpatrick*, 821 F.2d at 1465 ("A court may dismiss on the bases of the Fifth Amendment Due Process or Grand Jury Clauses. . . . A court may also dismiss an indictment by relying on its supervisory powers."). The Court's reasoning for dismissal pursuant to its supervisory authority applies with equal force as to dismissal directly under the Fifth and Sixth Amendments.

[4] It should be noted that in *Kilpatrick*, as with other Tenth Circuit cases, only the defendant(s) sought dismissal. *See Kilpatrick*, 821 F.2d at 1460; *United States v. Pino*, 708 F.2d 523, 526 (10th Cir. 1983). The Court's

First, dismissal is the only available remedy for the constitutional infringements in this case. As the Supreme Court has instructed, a court's exercise of supervisory powers must be "tailored" to the particular violations at issue. *Morrison*, 449 U.S. at 364, 365. *See also United States v. Donnelly*, 41 F.4th 1102, 1107 (9th Cir. 2022) ("[T]he district court possesses supervisory authority to order the government to rectify violations of law with remedies shaped to redress the corresponding injury."). In many cases where a court is contemplating using its supervisory powers to remedy a constitutional violation, dismissal is one of several options. Where the prosecution has run afoul of its discovery obligations, for example, a court may exclude any improperly disclosed evidence; where the prosecution makes improper argument during trial the court may utilize a curative jury instruction. *See, e.g.*, *Morrison*, 449 U.S. at 366 ("The remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression."); *United States v. Dennison*, 891 F.2d 255, 260 (10th Cir. 1989) ("[T]he district court abused its discretion in dismissing the indictment because of the government's failure to comply with discovery orders. Under the circumstances, it should have opted for a lesser sanction.").

This, by contrast, is not a case where the Court has other tools at its disposal. The Court cannot order the return of Defendant to the United States. Dismissal of the charges is the only remedy, without which the violations of Defendant's Fifth and Sixth Amendment rights will persist unabated. *See, e.g.*, *United States v. Toombs*, 574 F.3d 1262, 1274 (10th Cir. 2009) (noting that a successful Sixth Amendment speedy trial claim "would require the district court to dismiss the case with prejudice"). Moreover, this case's nascent procedural posture distinguishes it from other cases where a court is considering dismissal after an indictment, in the midst of

---

actions in the instant case are surely less "drastic" given that the Government itself has moved to dismiss—the only change by the Court to the Government's request is the addition of prejudice.

trial, or even after a conviction. *See Kilpatrick*, 821 F.2d at 1478 (Seymour, J., dissenting) (noting that in several prior Tenth Circuit cases "the argument to dismiss the indictment was made after conviction, a time at which the interest in finality is very substantial and the harmlessness of the error is therefore weighted heavily").

Second, the threat of prejudice to Defendant is severe.[5] As discussed above, absent dismissal, the Government's deportation of Defendant would in all likelihood completely vitiate Defendant's right to a speedy trial. Without Defendant's presence in the United States, he cannot stand trial.[6] To be deprived of a trial altogether is obviously prejudicial to Defendant. "Moreover, Defendant is prejudiced by having a criminal charge open against him even if he is out of the United States." *Castillo*, 537 F. Supp. 3d at 130. Additionally, the constitutional infringements in this case amount to, in effect, a total absence of attorney representation. The Government's actions in deporting Defendant have made communication between Defendant and his counsel practically impossible. Defendant cannot consult with his attorney about witnesses who may be able to testify on his behalf, evidence he may marshal in his favor, litigation strategy, or any other of the litany of things that comprise attorney representation. There can be no question but that there has been and will be "prejudice . . . to the ability of [Defendant's] counsel to provide adequate representation in these criminal proceedings." *Morrison*, 449 U.S. at 366.

To be sure, the immigration-related charges with which this Court is extremely familiar (i.e., Illegal Entry Without Inspection and Illegal Reentry Subsequent to Prior Deportation) are

---

[5] The Court notes that the Tenth Circuit has been less explicit than other circuit courts of appeals in stating that prejudice is *always* required in order for a court to dismiss charges as an exercise of its supervisory powers. *Compare, e.g., United States v. Derrick*, 163 F.3d 799, 806-07 (4th Cir. 1998); *with, e.g., United States v. Villa-Chaparro*, 115 F.3d 797, 804 (10th Cir. 1997) ("[D]ismissal of an indictment as a remedy for government abuse of the court's subpoena power is drastic and surely requires a showing of prejudice to a defendant."). Because the Court concludes that prejudice is obvious in the case at bar, it need not determine conclusively whether a showing of prejudice is required under the Tenth Circuit's precedents.

[6] The Court acknowledges that a defendant may consent in writing to his or her absence from trial for a misdemeanor offense pursuant to Federal Rule of Criminal Procedure 43(b)(2). However, upon review of the docket in this case, the Court has found no such written consent to a trial *in absentia*.

often easily proven. One could imagine greater difficulty in demonstrating prejudice in those cases. But the same cannot be said of the charges Defendant faces here. As the Government acknowledged, these charges (Penalty for Violation of Security Regulations in violation of 50 U.S.C. § 797 and Entering Military Property in violation of 18 U.S.C. § 1382) are currently the subject of ongoing litigation as to their propriety as a matter of law. MTD at 1-2. Several judges of this Court, and others, have expressed extreme skepticism as to whether the factual basis as alleged by the Government could legally sustain a conviction under these statutes. *See, e.g.*, Order Dismissing Charges, ECF No. 5; Order Severing Counts, ECF No. 10.[7]

Even assuming that these charges can be prosecuted at all, the elements of the crimes must be proved with detailed and highly contestable facts. The Government must prove, for example, that the Defendant entered onto land that is part of the NMNDA, *see* Information, ECF

[7] *See also* Tr. of Proceedings Appeal of Release Order Hr'g at 21:24-22:6, *United States v. Toirov*, 25-cr-1801-SMD (June 18, 2025), ECF No. 17 [hereinafter *Toirov* Release Appeal Tr.] ("[THE COURT (Judge Sarah M. Davenport):] [I] am having a real hard time understanding how the Government can argue that someone does not have to know the nature, the character of the land they're entering is military land to be subject to increased penalties, to be entitled to a jury trial, a district judge on a class A misdemeanor, and twice the penalty that they would face just for coming into the United States unlawfully."); *id.* at 34:16-25 ("[Defense Counsel]: Yes. I think that the Government's argument implicates potential double jeopardy and multiplicity concerns if the law would truly allow for conduct that encompasses only an EWI in terms of mens rea requirements to then be bootstrapped or tacked on to two separate criminal statutes increasing the possible penalty by an additional 18 months. THE COURT: Okay. And that's the Court's concern."); *id.* at 40:20-41:4 ("[THE COURT:] But in this case, I do not find that the government has presented specific evidence that shows that they can meet the [mens rea] element. And I am adopting the elements and requirements that are set forth in Judge Wormuth's order. So in cases that the Government—including this one, if they come before me in trial and you want a brief reconsideration of that, I will read whatever you have. But just saying, 'Well, because we said he came in unlawfully and he knew that, it's sufficient,' I don't buy it. And so in this case, I am finding that the weight of the evidence is not strong against [the defendant].").

The District of New Mexico is not the only federal court to raise issues with these charges. In a case with the same three charges as those faced by Defendant here, a federal magistrate judge in the Western District of Texas granted a Rule 29(a) motion for judgment of acquittal on the 50 U.S.C. § 797 charge. Judgment in a Criminal Case, *United States v. De La Cruz-Alvarez*, No. 3:25-mj-02401-LE-1 (W.D. Tex. June 4, 2025), ECF No. 62. The judge concluded that the Government had not presented sufficient evidence to meet the mens rea requirement of the statute. *See* Transcript of Criminal Jury Trial, Day 2 at 111:12-114:23, *De La Cruz-Alvarez*, No. 3:25-mj-02401-LE-1, ECF No. 66. The jury acquitted the defendant on the 13 U.S.C. § 1382 charge and convicted the defendant on the 8 U.S.C. § 1325 charge, for which the defendant was sentenced to time served plus one business day. Judgment in a Criminal Case, *De La Cruz-Alvarez*, ECF No. 62. *See also, e.g.*, Order Regarding Probable Cause, *United States v. Garcia-Ramirez*, No. EP:25-M-2281(1)MAT (W.D. Tex. May 22, 2025), ECF No. 10 (dismissing 50 U.S.C. § 797 charge from the complaint for lack of probable cause); Order Regarding Probable Cause, *United States v. Alvarez-Espinoza*, No. EP: 25-M-2280-MAT(1) (W.D. Tex. May 22, 2025), ECF No. 15 (same).

No. 6—which in turn requires proof that the particular parcel of land is contained within the noncontiguous boundaries of the Roosevelt Reservation.[8] Indeed, in the only case thus far to proceed to trial on these charges in this District, the Government *conceded that it had no evidence as to essential elements of the crimes*. Bench Trial (Audio Recording) at 3:17:57-3:18:06, *United States v. Flores-Penaloza*, No. 2:25-cr-1075 (D.N.M. June 17, 2025) (Assistant U.S. Attorney Randy Castellano noting, after a colloquy with the Court about whether the Government had evidence as to the land status of the particular point where the defendant purportedly entered the United States, "I'll agree with the Court, we do have nothing more on that. I don't dispute that at all."); *id.* at 3:18:19-41 (Chief Magistrate Judge Gregory B. Wormuth stating that "the United States has come in here and put on not a single bit of evidence that allowed me to find that he even entered the National Defense Area, based on the witnesses I heard. And obviously I'm going to be granting directed verdict on Counts 2 and 3."); *id.* at 3:19:19-21 (Judge Wormuth stating that the Government's conduct was "very, very disturbing"). Put simply, these charges are far from a slam dunk. It is not speculation to conclude that the infringement of Defendant's right to counsel would cause serious prejudice to Defendant.

Third, dismissal with prejudice is necessary to deter the Government from its repeated disregard for statutory and constitutional rights. *Cf. United States v. Pino*, 708 F.2d 523, 530

---

[8] In the appeal of release order hearing in *United States v. Toirov* before the Honorable Sarah M. Davenport, for example, the Government proffered that the defendant was arrested at a point, based on GPS coordinates, that was approximately "3 miles to the east of one of the non-NDA areas, and approximately 1.8 miles to the west of another non-NDA area." *Toirov* Release Appeal Tr. at 12:1-12. The Government also stated that it "confirmed" that the defendant's arrest coordinates were in the NDA, although it did not make the same proffer as to the coordinates of a sensor activation at the time of the defendant's entry. *Id.* at 13:5-12. Defense counsel noted that in other cases the Government had provided maps depicting "conflicting areas that are or are not part of the NMNDA," and questioned whether the Government would be able to put on a witness establishing the land status in that particular case. *Id.* 30:9-31:5. *See also* United States' Resp. to Court's Oral Order at 2, *United States v. Jimenez-Santiz*, No. 25-cr-1047-GBW (D.N.M. May 22, 2025), ECF No. 11 ("On or about May 15, 2025, the United States Attorneys Office learned from the United States Border Patrol that portions of the international border previously understood as encompassed by the NM NDA were not, in fact, transferred to the jurisdiction of the Department of the Army. Agents with the United States Border Patrol began reviewing previously filed complaints to identify cases in which there was insufficient evidence to conclude that the defendant crossed through the NM NDA.").

(10th Cir. 1983) ("The remedy of dismissal of an indictment . . . is applied to insure proper standards of conduct by the prosecution."). The Government's pattern of conduct has worked a violation of Speedy Trial Act and/or Fifth Amendment and Sixth Amendment rights in literally hundreds of cases before this Court. The Court digresses briefly here to acknowledge and address the fact that the circumstances of this case and its ilk do not constitute what is typically considered to be prosecutorial or government misconduct. The Government, strictly speaking, has not engaged in activity that in and of itself violates a rule, statute, or other law. Nonetheless, the Government *has* repeatedly engaged in a pattern of conduct that invariably causes rights violations. When DHS initially took custody of Defendant on May 10, it turned him over to USAO for prosecution. But "[i]mmediately upon Defendant's pretrial release, ICE [or CBP] took custody of Defendant and deported him, thus thwarting his criminal prosecution." *Resendiz-Guevara*, 145 F. Supp. 3d at 1135. DHS is, of course, a separate entity from USAO. But although USAO cannot dictate DHS's actions, it is not entirely without ability to exert influence. For example, USAO could have communicated with DHS to administratively stay removal pursuant to 8 C.F.R. § 241.6, or to use the departure-control mechanism provided by 8 C.F.R. § 215.2. In the words of another court facing the same situation, "The Court cannot contemplate why the two Executive Branch agencies that began a concerted effort to deal with Defendant suddenly changed course." *Resendiz-Guevara*, 145 F. Supp. 3d at 1135.

In the instant case, and many others, the Government has admitted to this Court that it did nothing to attempt to keep Defendant in the United States (nor to allow him to return), by the methods the Court mentioned or otherwise. MTD at 1; Gov't's Suppl. Resp. at 2 ("Once Defendant was transferred to ICE custody, the United States has not interfered in the deportation process or otherwise sought to delay Defendant's removal from the United States."). The

Government's arguments that its hands are tied are unavailing. The Government argues that Defendant is subject to a final order of removal, and "[w]hen an alien is subject to a final order of removal, the Immigration and Nationality Act . . . provides that the Executive Branch 'shall remove the alien from the United States within a period of 90 days.'" *Id.* at 2 (quoting 8 U.S.C. § 1231(a)(1)(A)). First, as Defense counsel points out, Defendant was not subject to a removal order before he was apprehended by CBP—"[a]n order of removal need not have been processed until *after* the termination of this case." Def.'s Resp. at 4. Defendant could have been paroled into the country pursuant to 8 C.F.R. § 212.5 and 8 U.S.C. § 1182(d)(5)(A) (permitting parole on a case-by-case basis for "significant public benefit").

Second, even with the current order of removal, the Court is not convinced that the 90-day removal period has begun to run. Under the INA, "[t]he removal period begins on the latest" of three dates, one of which is "the date the alien is released from detention or confinement" where "the alien is detained or confined (except under an immigration process)." 8 U.S.C. § 1231(a)(1)(B)(iii). As other courts have concluded, that provision is reasonably understood as referring to "release from incarceration pursuant to a final judgment of conviction as entered by a court of competent jurisdiction[,]" not pretrial release on conditions pursuant to the Bail Reform Act. *Trujillo-Alvarez*, 900 F. Supp. 2d at 1174; *see also Resendiz-Garcia*, 145 F. Supp. 3d at 1135; *see also United States v. Garcia-Chagala*, No. 2:17-cr-133-FtM-38MRM, 2017 WL 6535198, at *2 (M.D. Fla. Dec. 21, 2017); *United States v. Lutz*, No. CR-19-692-001-TUC-RM (BGM), 2019 WL 5892827, at *4 (D. Ariz. Nov. 12, 2009); *United States v. Blas*, No, CRIM. 13-0178-WS-C, 2013 WL 5317228, at *5 (S.D. Ala. Sept. 20, 2013). Release from incarceration pursuant to a final judgment, of course, did not occur in this case.

As to 8 C.F.R. § 215.3, the Government argues that the discretion thereunder

> is limited to exceptional circumstances where ICE is able to facilitate other means of supervision, such as ankle monitoring, as the alien remains inadmissible and subject to deportation. The United States has not determined that Defendant's case reaches the necessary threshold to request ICE withhold from proceeding with their otherwise statutorily mandated duty, nor does the United States believe that ICE would be able or willing to comply with such a request given that it would necessitate supervising hundreds of defendants.

Gov't Suppl. Resp. at 2-3. In the first place, the "other means of supervision" requirement is not mentioned in the regulations, and the Government cites no authority therefor. Additionally, contrary to the Government's assertions about the feasibility of supervision, ICE in fact maintains an Alternatives to Detention Program in certain areas (including El Paso) through which it engages in the very sort of supervision the Government eschews. *See* Immigr. & Customs Enforcement, *Alternatives to Detention*, https://www.ice.gov/features/atd [https://perma.cc/E98D-HPVR]. More fundamentally, the Government's response as to its own prioritization determination highlights the very problem with its actions. The Government *could* attempt to have ICE delay removal proceedings, but it determined that "the Defendant's case" does not "reach[] the necessary threshold" to do so. Gov't's Suppl. Resp. at 3. Apparently, by the Government's own admission, these cases are not a high priority—and yet the Government insists on bringing them again and again against "hundreds of defendants." *Id.*

From the first of these cases, the Court signaled to the Government that it had serious concerns about the effect of the Government's prosecution/deportation bait-and-switch on defendants' rights. *See, e.g.*, Order to Show Cause at 2, *United States v. Lazo-Rojas*, No. 2:25-cr-957-MIS (D.N.M. June 16, 2025), ECF No. 17. Giving the Government the benefit of the doubt, the Court then dismissed the earliest group of cases without prejudice—but warned the Government that the Court's concerns persisted and it would consider dismissal with prejudice

should the Government continue its pattern of conduct. *See, e.g.*, Order Dismissing Counts 2 & 3 of the Information Without Prejudice at 1 n.2, *United States v. Aguilar-Morales*, No. 2:25-CR-1010-MIS (D.N.M. June 26, 2025), ECF No. 21.

The Court's warnings apparently fell on deaf ears. Undeterred by the Court's appeals to defendants' statutory and constitutional rights, the Government continues to bring the same charges in case after case, then stand idly by as each defendant is deported and his or her Fifth and Sixth Amendment rights are violated correspondingly.[9] Clearly, dismissal without prejudice is insufficient to dissuade the Government from its pattern of rights-depriving conduct. *Cf. United States v. Castro-Guzman*, No. CR-19-2992-TUC-CKJ (LCK), 2020 WL 3130395, at *4 (D. Ariz. May 11, 2020) ("Despite this issue arising numerous times in this District, and the Court dismissing cases repeatedly, it appears that the U.S. Attorney's Office has done nothing to attempt resolution of this ongoing issue."); *Lutz*, 2019 WL 5892827, at *5 ("Dismissal of the indictment [with prejudice] is appropriate under this Court's supervisory powers to remedy the ongoing violation of Defendant's Sixth Amendment rights" and "[i]n order . . . to deter ICE and the U.S. Attorney's Office from continuing to engage in turf battles in lieu of inter-agency cooperation"); *Castillo*, 537 F. Supp. 3d at 131 (dismissing indictment without prejudice but warning, "if ICE continues a practice of removing defendants without regard to ongoing criminal proceedings," dismissal with prejudice may be warranted).

[9] The Government has doubled down in the instant case, *see generally* Gov't's Suppl. Resp., and has continued the same course of action in dozens of new cases. *See, e.g.*, Resp. to Order to Show Cause & Unopposed Mot. to Dismiss Counts 2 & 3 of the Information Without Prejudice, *United States v. Vega-Ramirez*, No. 2:25-cr-01967-MIS-1 (D.N.M. July 7, 2025), ECF No. 14; Resp. to Order to Show Cause & Unopposed Mot. to Dismiss Counts 2 & 3 of the Information Without Prejudice, *United States v. Lopez-Manoatl*, No. 2:25-cr-02388-MIS (D.N.M. July 10, 2025), ECF No. 13.

Finally, the public interest in prosecuting the remaining charges in this case is not weighty. The Supreme Court has instructed that a court's exercise of its supervisory authority must be done "with a view toward balancing the interests involved[.]" *Hasting*, 461 U.S. at 506-07. That is, a court must "strike the balance between" the interests favoring the exercise of supervisory powers "on the one hand, and the interest in the prompt administration of justice and the interests of the victims on the other." *Id.* at 509. *See also, e.g.*, *United States v. Swenson*, 894 F.3d 677, 685 (5th Cir. 2018) ("Dismissal of an indictment with prejudice is a rare result because, even in the face of prosecutorial misconduct, there is a public interest in having indictments prosecuted." (internal quotation marks omitted)). Here, Defendant has already been convicted of Illegal Entry Without Inspection—a crime with a near identical *actus reus* to the remaining charges. The Court, of course, does not mean to minimize the importance of the United States's immigration laws—there is always a public interest in having crime prosecuted. But Defendant has already been successfully prosecuted for the conduct underlying the remaining charges. And those charges do not themselves carry lengthy sentences—a maximum of one year imprisonment under 50 U.S.C. § 797, and six months imprisonment under 18 U.S.C. § 1382.[10] The interests served by the Court's exercise of its supervisory powers to dismiss the charges with prejudice in this case (remedying constitutional rights violations and deterring illegal conduct) are by themselves significant, and become all the more so as balanced against the comparatively weak interest of the public in continuing the prosecution.

[10] In fact, in the single case of this kind that the Undersigned is aware of where a defendant has been convicted and sentenced under 18 U.S.C. § 1382 he was sentenced to time served plus one business day. Judgment in a Criminal Case, *United States v. Trejo-Burbano*, 25-mj-2298-MAT (W.D. Tex. June 17, 2025), ECF No. 49.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss Counts 2 and 3 of the Information Without Prejudice, ECF No. 15, is **DENIED**. Counts 2 and 3 of the Information are **DISMISSED WITH PREJUDICE.**

Margaret Strickland

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE